# EXHIBIT A

**REICH RADCLIFFE & HOOVER LLP**
Marc G. Reich (SBN 159936)
mgr@reichradcliffe.com
Adam T. Hoover (SBN 243226)
adhoover@reichradcliffe.com
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660
Phone:  (949) 975-0512
Fax: (949) 975-0514

**LIFSHITZ & MILLER**
Joshua M. Lifshitz (*Pro Hac Vice to be submitted*)
jml@jlclasslaw.com
821 Franklin Ave., Suite 209
Garden City, NY 11530
Telephone: (516) 493-9780
Fax: (516) 280-7376

Attorneys for Plaintiff
JENNIFER SIMPSON

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAY 23 2017

Sherri R. Carter, Executive officer/Clerk

By: _____, Deputy
        Moses Soto

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

JENNIFER SIMPSON, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

SNAP INC.,
EVAN SPIEGEL,
ROBERT MURPHY,
ANDREW VOLLERO,
JOANNA COLES,
A.G. LAFLEY, MITCHELL LASKY,
MICHAEL LYNTON,
STANLEY MERESMAN,
SCOTT D. MILLER,
CHRISTOPHER YOUNG,
MORGAN STANLEY & CO. LLC,
GOLDMAN, SACHS, & CO.,
J.P. MORGAN SECURITIES LLC,
DEUTSCHE BANK SECURITIES INC.,
BARCLAYS CAPITAL INC.,
CREDIT SUISSE SECURITIES (USA) LLC,
ALLEN & COMPANY LLC,
BTIG, LLC,
C.L. KING & ASSOCIATES, INC.,
CITIGROUP GLOBAL MARKETS INC.,
CONNAUGHT (UK) LIMITED,

Case No:   **BC 662444**

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933**

**DEMAND FOR JURY TRIAL**

COMPLAINT

COWEN AND COMPANY, LLC,
EVERCORE GROUP, LLC,
JEFFERIES LLC,
JMP SECURITIES LLC,
LIONTREE ADVISORS LLC,
LUMA SECURITIES LLC,
MISCHLER FINANCIAL GROUP, INC.,
OPPENHEIMER & CO. INC.,
RBC CAPITAL MARKETS, LLC,
SAMUEL A. RAMIREZ & CO., INC.,
STIFEL FINANCIAL CORP.,
SUNTRUST ROBINSON HUMPHREY, INC.,
THE WILLIAMS CAPITAL GROUP, L.P.,
UBS SECURITIES LLC, and
WILLIAM BLAIR & COMPANY, L.L.C.,

        Defendants,

COMPLAINT

**Exhibit A**

**000013**

Plaintiff Jennifer Simpson ("Plaintiff") alleges the following based upon the investigation of Plaintiff's counsel, which included a review of U.S. Securities and Exchange Commission ("SEC") filings by Snap Inc. ("Snap" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.      NATURE OF THE ACTION

1.      This is a securities class action on behalf of all persons who purchased the Company's Class A common stock in or traceable to the Company's initial public offering on or about March 2, 2017 (the "IPO"), seeking to pursue remedies under the Securities Act of 1933 (the "1933 Act") against Snap, certain of the Company's officers and/or directors, and the investment banks that underwrote the IPO.

2.      The Company was founded in 2010 and was formerly known as Snapchat, Inc. ("Snapchat"), but changed its name to Snap Inc. in September 2016.  Snap is a camera company most popularly known for its flagship product, Snapchat, which is a camera application that provides users ways to communicate through short videos and images via their mobile devices.  Through the Snapchat app on one's mobile device, users can use a variety of tools to edit and shape pictures they take on the app, known as "snaps."  The Snapchat app allows users to string numerous snaps together to form a personal "story."  Users can also view pre-loaded stories concerning up-to-date news events all around the world, from celebrity appearances to various sporting events.

3.      The Company makes money almost entirely through advertisements that pop up during one's story.

4.      The Company filed its initial registration statement on Form S-1 with the SEC on February 2, 2017, which was subsequently amended several times.  On February 27, 2017, Snap filed its final amended registration statement for the IPO, which was declared effective by the SEC on March 1, 2017 (the "Registration Statement").

5. On March 3, 2017, Snap filed with the SEC the final prospectus pursuant to Rule 424(b)(4) for the IPO (the "Prospectus," and, together with the Registration Statement, the "Offering Materials").

6. On or about March 3, 2017, the Company completed the IPO, selling 160.3 million shares of Class A common stock, inclusive of the over-allotment, at a public offering price of $17.00 per share (excluding shares sold in the IPO by certain existing stockholders). The Company raised net proceeds of $2.6 billion after deducting underwriting discounts and commissions of $68.1 million and other offering expenses of $14.7 million.

7. The Offering Materials contained statements that were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business and operations, which were known to Defendants or recklessly disregarded by them. In particular, Defendants made false and misleading statements and/or failed to disclose, among other things, that: (i) the number of daily active users ("DAUs") reported by Snap was materially false and misleading and inaccurate; and (ii) as a result, Snap's public statements were materially false and misleading at all relevant times.

8. The Offering Materials were negligently prepared, and, as a result, contained false and misleading statements of material fact and failed to disclose information required to be disclosed therein. Snap and its officers and directors negligently prepared and disseminated the materially inaccurate and misleading Registration Statement and Prospectus. The Underwriter Defendants (as defined herein) either knew about the omitted facts and failed to require their disclosure or did not know by failing to conduct a reasonable investigation and independently verify the representations in the Registration Statement and Prospectus. The claims in this action are based solely on strict liability and negligence, and are not based on any reckless or intentionally fraudulent conduct by or on behalf of defendants. The claims do not allege, arise from, or sound in fraud. Plaintiff specifically disclaims any allegations of fraud, scienter, or recklessness in these non-fraud claims.

9. After the market closed on May 10, 2017, the Company issued a press release and filed a current report on Form 8-K with the SEC announcing the Company's financial results for the first quarter of 2017. In particular, the Company reported disappointing user growth of 166 million daily

**Exhibit A**

**000015**

active users on the Snapchat app, only 8 million more than in the previous quarter and only 44 million more than the same period in the prior year.  This amounted to Snap's slowest year-to-year growth rate in at least two years.

10.    On this news, the Company's stock dropped from $22.98 per share at close on May 10, 2017 to close at $18.05 per share on May 11, 2017, a loss of $4.93 per share, or approximately 21.45%, on extremely heavy volume of over 131 million shares.

11.    Then, on May 16, 2017, Anthony Pompliano ("Pompliano"), who was originally hired away from Facebook, Inc. ("Facebook") to run Snapchat's new user growth and engagement team, filed a lawsuit against Snap, as well as other members of the Company's executive management, seeking protection from retaliation under state and federal whistleblower laws after the Company fired him three weeks into his position at Snap.[1]  The Whistleblower Action alleges, among other things, that Snap, then known as Snapchat, misrepresented its daily active users to potential advertisers in mid-2015, claiming "over 100 million DAUs [Daily Active Users]" when computer programs counted 95 million to 97 million DAUs.[2]  The Whistleblower Action further alleges that Snap's leaders and management told Pompliano that Snapchat's user growth was in the double digits when it was really 1% to 4%, and that they told unnamed outside people that 87% of users completed Snapchat's registration process and 40% used the app past a week when the real numbers were half or less than the figures represented by the Company to the investing public.

12.    The Whistleblower Action further asserts that Pompliano alerted defendant Andrew Vollero ("Vollero") – the Company's Chief Financial Officer ("CFO") – of the falsity of Snapchat's representations regarding its amount of DAUs, among other employees, but was rebuffed and later fired.

---

[1] *See Anthony Pompliano v. Snap Inc., d.b.a. Snapchat, et al.*, Case No. 2:17-cv-3664 (C.D.Cal.) (the "Whistleblower Action").

[2] Annlee Ellingson, *Snap Inc. hit with federal whistleblower lawsuit*, L.A. Biz (May 16, 2017), *available at* http://www.bizjournals.com/losangeles/news/2017/05/16/snap-inc-hit-with-federal-whistleblower-lawsuit.html?ana=yahoo&yptr=yahoo.

PAGE 3

COMPLAINT

Exhibit A

000016

13. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**II.    JURISDICTION AND VENUE**

14. The claims alleged herein arise under §§ 11, 12(a)(2) and 15 of the 1933 Act, 15 U.S. C. §§ 77k, 771(a)(2) and 77o. Jurisdiction is conferred by § 22 of the 1933 Act and venue is proper pursuant to § 22 of the 1933 Act. Section 22 of the 1933 Act explicitly states that "[e]xcept as provided in section 16(c), no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court in the United States." Section 16(c) refers to "covered class actions," which are defined as lawsuits brought as class actions or brought on behalf of more than 50 persons asserting claims under state or common law. This is an action asserting federal law claims. Thus, it does not fall within the definition of a "covered class action" under § 16(b)-(c) and therefore is not removable to federal court under the Securities Litigation Uniform Standards Act of 1998.

15. This Court has subject matter jurisdiction over the claims asserted in this action pursuant to the California Constitution, Article VI, § 10, because this case is a cause not given by statute to other courts.

16. The Court has personal jurisdiction over each of the Defendants because they conducted business in and/or were citizens of California at the time of the IPO. This includes Snap, which maintained its principal place of business in this County at the time of the IPO, and the Individual Defendants (as defined herein), all of whom reside or work in California. Each of the Underwriter Defendants (as defined herein) also has offices and/or conducts significant business in California. Moreover, the violations of law complained of herein also occurred in this County, including the dissemination of materially false and misleading statements complained of herein into this County.

17. Venue is proper because the violations of law complained of herein occurred in this County, including-the dissemination of materially false and misleading statements into this County, the purchase of the Company's common stock by members of the class who reside in this County and the sale of the Company's common stock by certain of the Underwriter Defendants in this County. In

**Exhibit A**

**000017**

addition, certain of the Defendants live, are headquartered and/or maintain offices or operations in this County. Snap's headquarters are located in Los Angeles County at 63 Market Street, Venice, California 90291.

**III.    PARTIES**

18.    Plaintiff Jennifer Simpson ("Plaintiff") purchased shares of the Company's common stock pursuant and/or traceable to the untrue and misleading Registration Statement and Prospectus for the IPO and was damaged thereby.

19.    Defendant Snap Inc. ("Snap" or the "Company") is a Delaware corporation with its principal executive offices located at 63 Market Street, Venice, California 90291.  The Company's securities are traded over the New York Stock Exchange ("NYSE") under the ticker symbol "SNAP." Snap is the issuer for the common stock offered in the IPO.

**Individual Defendants**

20.    Defendant Evan Spiegel ("Spiegel") was, at all relevant times, a director of Snap and the Chief Executive Officer ("CEO") of the Company.  Defendant Spiegel participated in preparing the Prospectus and the Registration Statement, and he signed or authorized the signing of the Company's Registration Statement.

21.    Defendant Robert Murphy ("Murphy") was, at all relevant times, a director of Snap and the Chief Technology Officer of the Company. Defendant Murphy participated in preparing the Prospectus and the Registration Statement, and he signed or authorized the signing of the Company's Registration Statement.

22.    Defendant Andrew Vollero ("Vollero") was, at all relevant times, the Chief Financial Officer ("CFO") of Snap (Principal Financial and Accounting Officer).  Defendant Vollero participated in preparing the Prospectus and the Registration Statement, and he signed or authorized the signing of the Company's Registration Statement.

23.    Defendant Joanna Coles ("Coles") was, at all relevant times, a director of Snap. Defendant Coles participated in preparing the Prospectus and the Registration Statement, and he signed or authorized the signing of the Company's Registration Statement.

**Exhibit A**

**000018**

24.    Defendant A.G. Lafley ("Lafley") was, at all relevant times, a director of Snap. Defendant Lafley participated in preparing the Prospectus and the Registration Statement, and he signed or authorized the signing of the Company's Registration Statement.

25.    Defendant Mitchell Lasky ("Lasky") was, at all relevant times, a director of Snap. Defendant Lasky participated in preparing the Prospectus and the Registration Statement, and he signed or authorized the signing of the Company's Registration Statement.

26.    Defendant Michael Lynton ("Lynton") was, at all relevant times, a director of Snap. Defendant Lynton participated in preparing the Prospectus and the Registration Statement, and he signed or authorized the signing of the Company's Registration Statement.

27.    Defendant Stanley Meresman ("Meresman") was, at all relevant times, a director of Snap.  Defendant Meresman participated in preparing the Prospectus and the Registration Statement, and he signed or authorized the signing of the Company's Registration Statement.

28.    Defendant Scott D. Miller ("Miller") was, at all relevant times, a director of Snap. Defendant Miller participated in preparing the Prospectus and the Registration Statement, and he signed or authorized the signing of the Company's Registration Statement.

29.    Defendant Christopher Young ("Young") was, at all relevant times, a director of Snap. Defendant Young participated in preparing the Prospectus and the Registration Statement, and he signed or authorized the signing of the Company's Registration Statement.

30.    Defendants Spiegel, Murphy, Vollero, Coles, Lafley, Lasky, Lynton, Meresman, Miller and Young are referred to herein as the "Individual Defendants."

**Lead Underwriter Defendants**

31.    Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 60,484,615 shares of Class A common stock to sell in the IPO.

32.    Defendant Goldman, Sachs & Co. ("Goldman") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the

PAGE 6
COMPLAINT

**Exhibit A**
**000019**

IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 49,600,000 shares of Class A common stock to sell in the IPO.

33.     Defendants Morgan Stanley and Goldman acted as representatives for all the Underwriter Defendants (described below) and are referred to herein as the "Lead Underwriter Defendants."

**Underwriter Defendants**

34.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 26,500,000 shares of Class A common stock to sell in the IPO.

35.     Defendant Deutsche Bank Securities Inc. ("Deutsche") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 20,000,000 shares of Class A common stock to sell in the IPO.

36.     Defendant Barclays Capital Inc. ("Barclays") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 12,000,000 shares of Class A common stock to sell in the IPO.

37.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 6,153,846 shares of Class A common stock to sell in the IPO.

38.     Defendant Allen & Company LLC ("Allen") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 14,000,000 shares of Class A common stock to sell in the IPO.

**Exhibit A**

**000020**

39.     Defendant BTIG, LLC ("BTIG") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 923,077 shares of Class A common stock to sell in the IPO.

40.     Defendant C.L. King & Associates, Inc. ("C.L. King") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 123,077 shares of Class A common stock to sell in the IPO.

41.     Defendant Citigroup Global Markets Inc. ("Citigroup") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 1,230,769 shares of Class A common stock to sell in the IPO.

42.     Defendant Connaught (UK) Limited ("Connaught") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 307,692 shares of Class A common stock to sell in the IPO.

43.     Defendant Cowen and Company, LLC ("Cowen") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 923,077 shares of Class A common stock to sell in the IPO.

44.     Defendant Evercore Group, LLC ("Evercore") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 615,385 shares of Class A common stock to sell in the IPO.

45.     Defendant Jefferies LLC ("Jefferies") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 615,385 shares of Class A common stock to sell in the IPO.

**Exhibit A**
**000021**

46.    Defendant JMP Securities LLC ("JMP") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 307,692 shares of Class A common stock to sell in the IPO.

47.    Defendant LionTree Advisors LLC ("LionTree") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 923,077 shares of Class A common stock to sell in the IPO.

48.    Defendant LUMA Securities LLC ("LUMA") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 307,693 shares of Class A common stock to sell in the IPO.

49.    Defendant Mischler Financial Group, Inc. ("Mischler") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 123,077 shares of Class A common stock to sell in the IPO.

50.    Defendant Oppenheimer & Co. Inc. ("Oppenheimer") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 615,385 shares of Class A common stock to sell in the IPO.

51.    Defendant RBC Capital Markets, LLC ("RBC") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 1,230,769 shares of Class A common stock to sell in the IPO.

52.    Defendant Samuel A. Ramirez & Co., Inc. ("Samuel") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 123,077 shares of Class A common stock to sell in the IPO.

**Exhibit A**
**000022**

53. Defendant Stifel Financial Corp. ("Stifel") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 923,077 shares of Class A common stock to sell in the IPO.

54. Defendant SunTrust Robinson Humphrey, Inc. ("SunTrust") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 307,692 shares of Class A common stock to sell in the IPO.

55. Defendant The Williams Capital Group, L.P. ("Williams Capital") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 123,077 shares of Class A common stock to sell in the IPO.

56. Defendant UBS Securities LLC ("UBS") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 1,230,769 shares of Class A common stock to sell in the IPO.

57. Defendant William Blair & Company, L.L.C. ("William Blair") is an investment banking and financial services corporation that acted as an underwriter for Snap's IPO, helping to draft and disseminate the IPO Registration Statement and Offering Documents, for which it received fees and commissions, and agreed to purchase 307,692 shares of Class A common stock to sell in the IPO.

58. The Lead Underwriter Defendants, Deutsche, Barclays, Credit Suisse, Allen, BTIG, C.L. King, Citigroup, Connaught, Cowen, Evercore, Jefferies, JMP, LionTree, LUMA, Mischler, Oppenheimer, RBC, Samuel, Stifel, SunTrust, Williams Capital, UBS and William Blair are referred to herein as the "Underwriter Defendants." The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein. As such, the Underwriter Defendants are liable for the false and misleading statements in the Offering Materials as follows:

**Exhibit A**
**000023**

a. The Underwriter Defendants are investment banking houses that specialize, *inter alia*, in underwriting public offerings of securities. They served as the underwriters of the IPO and shared more than $97 million in commissions and fees collectively (upon full exercise of additional shares). The Underwriter Defendants determined that in return for their share of the IPO proceeds, they were willing to merchandize Snap stock in the IPO. The Underwriter Defendants arranged a multi-city roadshow prior to the IPO during which they, and representatives from Snap, met with potential investors and presented highly favorable information about the Company, its operation, and its financial prospects.

b. The Underwriter Defendants also demanded and obtained an agreement from Snap that Snap would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws. They also made certain that Snap had purchased millions of dollars in directors' and officers' liability insurance.

c. Representatives of the Underwriter Defendants also assisted Snap and the (Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of Snap, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning Snap's operations and financial prospects.

d. In addition to availing themselves of virtually unbridled access to internal corporate documents, agents of the Underwriter Defendants met with Snap's lawyers, management, and top executives and engaged in "drafting sessions." During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which Snap stock would be sold; (iii) the language to be included in the Registration Statement; (iv) what disclosures about Snap would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Snap's management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, Snap's existing problems as detailed herein.

**Exhibit A**

**000024**

e.    The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Plaintiff and the other members of the Class.

59.    The Individual Defendants, Underwriter Defendants and defendant Snap are referred to herein as the "Defendants."

**IV.    SUBSTANTIVE ALLEGATIONS**

**A.    Background of the Company and Snap's Business**

60.    The Company was founded in 2010 as Snapchat, Inc. ("Snapchat") and changed its name to Snap Inc. in September 2016.  Snap is a camera company most popularly known for its flagship product, Snapchat, which is a camera application that provides users ways to communicate through short videos and images via their mobile devices.  Through the Snapchat app on one's mobile device, users can use a variety of tools to edit and shape pictures they take on the app, known as "snaps."  The Snapchat app allows users to string numerous snaps together to form a personal "story."  Users can also view pre-loaded stories concerning up-to-date news events all around the world, from celebrity appearances to various sporting events.

61.    The Company makes money almost entirely through advertisements that pop up during one's story.

62.    The Company filed its initial registration statement on Form S-1 with the SEC on February 2, 2017, which was subsequently amended several times.  On February 27, 2017, Snap filed its final amended registration statement for the IPO, which was declared effective by the SEC on March 1, 2017 (the "Registration Statement").

63.    On March 3, 2017, Snap filed with the SEC pursuant to Rule 424(b)(4), the final prospectus for the IPO (the "Prospectus," and, together with the Registration Statement, the "Offering Materials").

64.    On or about March 3, 2017, the Company completed the IPO, selling 160.3 million shares of Class A common stock, inclusive of the over-allotment, at a public offering price of $17.00 per share (excluding shares sold in the IPO by certain existing stockholders).  The Company raised net

proceeds of $2.6 billion after deducting underwriting discounts and commissions of $68.1 million and other offering expenses of $14.7 million.

### B.      False and Misleading Statements in the IPO and Offering Materials

65.      On March 3, 2017, the Company filed the final Prospectus, forming part of the Registration Statement for the IPO.  Under the section entitled "Risks Related to Our Business and Industry," the Prospectus stated, in pertinent part:

> We had 158 million Daily Active Users on average in the quarter ended December 31, 2016, and we view Daily Active Users as a critical measure of our user engagement. Adding, maintaining, and engaging Daily Active Users have been and will continue to be necessary. We anticipate that our Daily Active Users growth rate will decline over time if the size of our active user base increases or we achieve higher market penetration rates. If our Daily Active Users growth rate slows, our financial performance will increasingly depend on our ability to elevate user engagement or increase our monetization of users.
>
> *          *          *
>
> *We regularly review metrics, including our Daily Active Users and ARPU metrics, to evaluate growth trends, measure our performance, and make strategic decisions*. These metrics are calculated using internal company data and have not been validated by an independent third party. *While these numbers are based on what we believe to be reasonable estimates of our user base for the applicable period of measurement*, there are inherent challenges in measuring how our products are used across large populations globally.
>
> *          *          *
>
> Unless otherwise stated, statistical information regarding our users and their activities is determined by calculating the daily average of the selected activity for the most recently completed quarter included in this prospectus. For example, we state that on average over 2.5 billion Snaps were created every day in the quarter ended December 31, 2016. This metric is the average of the total number of Snaps created daily throughout the quarter ended December 31, 2016, which is the most recently completed quarter included in this prospectus. This same methodology is used to calculate other metrics related to Daily Active Users, including percentage of Daily Active Users that use the Chat Service every day, number of times a day Daily Active Users visit Snapchat, and amount of time spent on Snapchat every day.[3]

66.      The Registration Statement was signed by all of the Individual Defendants.

67.      The Offering Materials contained false and misleading statements and/or failed to disclose material adverse facts pertaining to the Company's business, operational and financial results,

---

[3] All emphasis added unless otherwise noted.

which were known to Defendants or recklessly disregarded by them. In particular, Defendants made false and misleading statements and/or failed to disclose, among other things, that: (i) the Company's reported user growth and DAUs was materially false and misleading; and (ii) as a result, Snap's public statements were materially false and misleading at all relevant times.

## C.    The Truth Begins to Emerge

68.    After the market closed on May 10, 2017, the Company issued a press release and filed a current report on Form 8-K with the SEC announcing the Company's financial results for the first quarter of 2017.  For the quarter, the Company reported a net loss of $2.21 billion, or $2.31 per diluted share, on revenue of $149.65 million, compared to a net loss of $104.58 million, or $0.14 per diluted share, on revenue of $38.8 million for the same period in the prior year.

69.    On May 11, 2017, the Company filed its first quarterly report on Form 10-Q with the SEC announcing its financial results for the quarter ended March 31, 2017 (the "Q1 2017 10-Q"), which reported disappointing DAU growth for its Snapchat app.  For the quarter, Snap reported 166 million DAUs, only 8 million more than in the previous period and only 44 million more than the same period in the prior year.  This was Snap's slowest year-to-year growth rate for the Snapchat app in at least two years.

70.    In the Q1 2017 10-Q, the Company stated, in pertinent part:

We had 166 million and 158 million Daily Active Users on average in the quarters ended March 31, 2017 and December 31, 2016, respectively, and we view Daily Active Users as a critical measure of our user engagement. Adding, maintaining, and engaging Daily Active Users have been and will continue to be necessary. We anticipate that our Daily Active Users growth rate will decline over time if the size of our active user base increases or we achieve higher market penetration rates. If our Daily Active Users growth rate slows, our financial performance will increasingly depend on our ability to elevate user engagement or increase our monetization of users.

\*        \*        \*

[A]lthough Daily Active Users grew by 7% from 143 million Daily Active Users for the quarter ended June 30, 2016 to 153 million Daily Active Users for the quarter ended September 30, 2016, the growth in Daily Active Users was relatively flat in the latter part of the quarter ended September 30, 2016.

**Exhibit A**

**000027**

71. On this news, the Company's stock dropped from $22.98 per share at close on May 10, 2017 to close at $18.05 per share on May 11, 2017, a loss of $4.93 per share, or approximately 21.45%, on extremely heavy volume of over 131 million shares.

72. On May 16, 2017, Anthony Pompliano ("Pompliano") filed the Whistleblower Action (*supra* note 1). Pompliano was hired to run Snapchat's new user growth and engagement team but was fired just three weeks into working at Snap. The Whistleblower Action seeks protection for Pompliano from retaliation under state and federal whistleblower laws after the Company fired him three weeks into his position at Snap. The Whistleblower Action alleges, among other things, that Snap, then doing business as Snapchat, misrepresented its daily active users ("DAUs") to potential advertisers in mid-2015, claiming "over 100 million DAUs" when computer programs counted 95 million to 97 million DAUs.[4]

73. The Whistleblower Action further alleges that upon finding out that Snapchat's DAUs were less than what was being reported, Pompliano immediately informed members of Snapchat's leadership and other members of management. In the Whistleblower Action, Pompliano claims that he told Snap's management that Snapchat's user growth was not in the double digits, but was actually closer to 1% to 4%. Further, Pompliano claims that Snap's management told unnamed outside people that 87% of users completed Snapchat's registration process and 40% used the app past a week when the real numbers were half or less of those figures.

74. Pompliano asserts in the Whistleblower Action that he alerted defendant Vollero of the falsity of Snapchat's representations, among other employees, but was rebuffed and later fired.

75. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

---

[4] Annlee Ellingson, *Snap Inc. hit with federal whistleblower lawsuit*, L.A. Biz (May 16, 2017), *available at* http://www.bizjournals.com/losangeles/news/2017/05/16/snap-inc-hit-with-federal-whistleblower-lawsuit.html?ana=yahoo&yptr=yahoo.

PAGE 15

COMPLAINT

**Exhibit A**

**000028**

**CLASS ALLEGATIONS**

76.    Plaintiff brings this action as a class action pursuant to § 382 of the California Code of Civil Procedure on behalf of a class consisting of all persons or entities who acquired the common stock of Snap pursuant and/or traceable to the false and misleading Offering Materials issued in connection with the IPO (the "Class").  Excluded from the Class are Defendants and their families, the officers, directors and affiliates of the defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

77.    The members of the Class are so numerous that joinder of all members is impracticable. The common shares were actively traded on the New York Stock Exchange, a developed and global electronic market. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Snap or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

78.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

79.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation, including litigation in Los Angeles Superior Court.

80.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.    whether the 1933 Act was violated by Defendants' acts as alleged herein,

b.    whether statements made by defendants to the investing public in connection with the IPO and in the Offering Materials misrepresented material facts about the business, operations and prospects of Snap; and

**Exhibit A**
**000029**

c.  to what extent the members of the Class have sustained damages and the proper measure of damages.

81.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for members of the Class to individually redress the wrongs done to them.

## FIRST CAUSE OF ACTION

### For Violation of § 11 of the 1933 Act Against All Defendants

82.    Plaintiff incorporates each and every preceding paragraph by reference.

83.    This Cause of Action is brought pursuant to § 11 of the 1933 Act, 15 U.S.C. § 77k, on behalf of the Class, against all Defendants.

84.    This Cause of Action does not sound in fraud.  Plaintiff does not allege that Defendants had scienter or fraudulent intent, which are not elements of a § 11 claim.

85.    The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary in order to make the statements made not misleading, and omitted to state material facts required to be stated therein.

86.    Snap is the registrant for the IPO.  The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

87.    As issuer of the common stock, Snap is strictly liable to Plaintiff and the Class for any misstatements and omissions.

88.    None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

89.    By reason of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, § 11 of the 1933 Act.

90.    Plaintiff acquired Snap common stock pursuant and/or traceable to the Registration Statement.

**Exhibit A**
**000030**

91.    Plaintiff and the Class have sustained damages.  The value of the common stock purchased pursuant to the Registration Statement has declined substantially subsequent to Defendants' violations.

## SECOND CAUSE OF ACTION

### For Violation of §12(a)(2) of the 1933 Act Against All Defendants

92.    Plaintiff incorporates each and every preceding paragraph by reference.

93.    This Cause of Action is brought pursuant to § 12(a)(2) of the 1933 Act, 15 U.S.C. § 77l(a)(2), on behalf of the Class, against all defendants.

94.    This Cause of Action does not sound in fraud.  Plaintiff does not allege that Defendants had scienter or fraudulent intent, which are not elements of a § 12(a)(2) claim.

95.    By means of the defective Prospectus, Defendants promoted and sold the Snap common stock to Plaintiff and other members of the Class.

96.    The Prospectus contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed Plaintiff and other members of the Class who purchased Snap's Class A common stock the duty to make a reasonable diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions as set forth above.

97.    Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus at the time Plaintiff acquired Snap's Class A common stock.

98.    By reason of the conduct alleged herein, Defendants violated § 12(a)(2) of the 1933 Act. As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased Snap's Class A common stock sustained damages in connection with their purchases. Accordingly, Plaintiff and the other members of the Class who hold their Class A common stock of Snap issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their common stock of Snap to the Defendants sued herein.  To the

**Exhibit A**
**000031**

extent Class members have sold their common stock of Snap, they seek damages to the extent permitted by law.

### THIRD CAUSE OF ACTION

#### For Violation of § 15 of the 1933 Act Against Snap and the Individual Defendants

99.   Plaintiff incorporates each and every preceding paragraph by reference.

100.   This Cause of Action is brought pursuant to § 15 of the 1933 Act against Snap and the Individual Defendants.

101.   The Individual Defendants each were control persons of Snap by virtue of their voting power over the Company and/or senior positions with the Company.  The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Snap.  Snap controlled the Individual Defendants and all its employees.

102.   Defendants each were culpable participants in the violations of §§ 11 and 12(a)(2) of the 1933 Act alleged in the Causes of Action above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.   Declaring this action to be a proper class action and certifying Plaintiff as a Class representative under § 382 of the California Code of Civil Procedure;

B.   Awarding Plaintiff and the members of the Class damages and interest;

C.   Awarding rescission or a rescissory measure of damages;

D.   Awarding Plaintiff's reasonable costs, including attorneys' fees; and

E.   Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues which can be heard by a jury.

Dated:      May 22, 2017                    **REICH RADCLIFFE & HOOVER LLP**

By: _____
Marc G. Reich
Adam T. Hoover

**LIFSHITZ & MILLER**

Joshua M. Lifshitz
Edward Miller

Attorneys for Plaintiff

PAGE 20

COMPLAINT

**Exhibit A**
**000033**

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Adam T. Hoover (SBN 243226)
**REICH RADCLIFFE & HOOVER LLP**
4675 MacArthur Court
Suite 550
Newport Beach, CA 92660
TELEPHONE NO.: (949) 975-0512    FAX NO.: (949) 975-0514
ATTORNEY FOR *(Name)*:   Plaintiff

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:   Simpson, et al. v. Snap, Inc., et al.

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAY 23 2017

Sherri R. Carter, Executive Officer/Clerk

By: _____, Deputy
Moses Soto

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $25,000) [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] **Counter** [ ] **Joinder** Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | BC 662444 JUDGE: DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[z] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [x] Large number of separately represented parties   d. [x] Large number of witnesses
b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
c. [x] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive

4. Number of causes of action *(specify)*: 3: Violations of Sec. 11, 12(a)(2), and 15 of the 1933 Securities Act.

5. This case [x] is [ ] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date:  May 22, 2017

Adam T. Hoover
_____
(TYPE OR PRINT NAME)

▶ *Adam T. Hoover*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal Solutions Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

**Exhibit A**
**000034**